FELDPAUSCH *v.* HENDERSHOT.

1. FRAUD—ACTIONABLE FRAUD MAY NOT BE PREDICATED ON MERELY BOASTFUL UTTERANCES.

In a suit to set aside a contract for an exchange of property on the ground of fraud, statements by one of the defendants, if made, that the property conveyed by them was worth $27,500; that they could get a buyer for it at that figure; that the tenant was going to marry and his wife would get insurance money and they would buy it at the price named, were but boastful utterances, upon which actionable fraud may not be predicated; especially in view of the fact that while plaintiffs' proof showed that the property was worth only from $12,000 to $15,000, defendants' witnesses, equally reliable, testified it was worth from $30,000 to $35,000.

2. SAME—REPRESENTATIONS AS TO VALUE OF MORTGAGE.

It cannot be said that plaintiffs, who were sound business men, relied on the statement of defendants that a second real estate mortgage, received as part of the consideration, was "as good as money in the bank, just as good as gold."

3. SAME—PROMISES AS TO FUTURE.

Promises of defendants to erect a dwelling on one of the vacant lots conveyed to plaintiffs, and to complete one then in course of erection, were not such representations as, if unfulfilled, will render the contract void on the ground of fraud.

On fraudulent character of false representations as to offers for property, see annotation in 35 L. R. A. (N. S.) 186.

Appeal from Kent; Perkins (Willis B.), J. Submitted January 15, 1929. (Docket No. 116, Calendar No. 33,852.) Decided March 28, 1929.

Bill by Leo Feldpausch and others against George Hendershot and others to set aside an exchange of real estate on the ground of fraud. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Irving H. Smith* and *Edward L. Eardley,* for plaintiffs.

*Cornelius Hoffius* and *Dorr Kuizema,* for defendants Hendershot.

SHARPE, J. On February 1, 1927, plaintiffs entered into a written contract with the defendants to sell and convey to them certain real estate in the city of Grand Rapids, then occupied by them in the conduct of a wholesale meat market, for the sum of $35,000, and all the personalty used by them in connection with said business for the sum of $10,000, to be paid for by defendants as follows:

1. By the assignment to plaintiffs of a real estate and chattel mortgage on 1,920 acres of land in Lake county, spoken of as the Voss ranch, and the chattels and personal property thereon, in the sum of $13,968.45, held by the Hendershots, but subject to a first mortgage thereon in the sum of $15,000, on which $750 had been theretofore paid.

2. By conveying to plaintiffs a property in South Bend, Indiana, known as the Bungalow inn, at the price of $27,500, subject to mortgages thereon in the sum of $8,227, with accrued interest to date.

3. By conveying to plaintiffs certain lots in Grand Rapids, completing a house then in course of erection on one lot and erecting a residence on another to sell for $6,500 or more.

Within a few days thereafter the deal was consummated by the execution and delivery of the conveyances provided for. Plaintiffs then took possession of the South Bend property and thereafter collected rent from the tenant therein, and defendants took possession of the meat market and conducted business therein. As security for the erection of the residence, the defendants George Hendershot and Merle R. Voss gave plaintiffs a promissory note for $6,000, payable within 6 months. The plaintiffs had looked over the ranch property during the preceding summer, and had visited the South Bend property and the lots conveyed before the contract was executed.

In their bill of complaint, filed in August, 1927, they aver that the conveyance made by them was secured by fraud, and pray that it be set aside and defendants required to reconvey the same to them relieved of a mortgage defendants have placed thereon, and that they be permitted to retain the property conveyed to them "to such an extent as will compensate your petitioners for any property they have lost by reason of fraud practiced upon them, or upon such other terms as to the court shall seem just."

After a hearing, in which the proofs were taken in open court, the trial court dismissed the bill of complaint. He, however, found that an incumbrance of $200 on the South Bend property had been inadvertently omitted from consideration when the conveyances were executed, and gave plaintiffs a personal decree against the defendants for that amount. Plaintiffs appeal.

The material allegations of fraud will now be considered.

1. It is insisted that as an inducement to their purchase of the South Bend property the defendants "stated positively that they had a buyer for Bungalow inn, who would purchase it for $27,500." Both of the male plaintiffs testified that Hendershot said he could sell this property for $27,500 in six months' time. One of them said:

"Why, he said he could get us $27,500 and possibly more. He said he had a buyer. He said this Lukkas' wife, that he was to marry, was going to get $20,000 life insurance, and they was going to buy it."

The other said:

"Well, he said that Lukkas, if I understand that right, or the lady, had $20,000 life insurance, and she would buy it."

These representations are said to have been made while the parties were driving to South Bend to look over the property. They there met Lukkas, who was then occupying it. No inquiry was made by the plaintiffs of his intention or ability to purchase it. Hendershot denied making these statements. He testified that one of the plaintiffs talked to Lukkas when they were there, and that Lukkas told him that $27,500 was a fair price for it, and also told him "about what money his wife had, and, if they were successful the first year, he would buy the inn." But, assuming them to have been made, we do not think actionable fraud can be predicated on them. They were but boastful utterances of Hendershot, intended no doubt to satisfy plaintiffs that the property was worth $27,500 and that they would receive that amount for it. As stated by plaintiffs, his expectancy of selling was based on the marriage of Lukkas and the willingness of his wife to put her insurance money into the property. Plaintiffs'

counsel rely on *Kefuss* v. *Whitley,* 220 Mich. 67. The holding in that case was by a divided court, and may not be extended to apply to such a representation as is here relied upon. It may not be improper to add that, while plaintiffs had proof of apparently competent witnesses that this property was worth but from $12,000 to $15,000, defendants' witnesses, no less competent, testified that it was worth from $30,000 to $35,000.

2. One of the plaintiffs testified that Hendershot stated that the second real estate mortgage—on Voss ranch—was ''as good as money in the bank, just as good as gold.'' It cannot be said that sound business men, as plaintiffs were, relied on such a statement as to the value of this mortgage. The defendants insist that it is worth all it calls for, and, if the witnesses called by them who testified to the value of the ranch property are to be believed, it was a sound investment for plaintiffs to make.

3. The promises of the defendants to erect a dwelling on one of the vacant lots, and to complete the one in course of erection, were not such representations as, if unfulfilled, will render the contract void. These and the statements as to the amounts due on the mortgage were matters in which the plaintiffs might have fully protected themselves in the contract. The trial court, who saw and heard the witnesses, found that the parties—

''were and still are on an equal basis as to business experience, intelligence and a mutual desire on their part at the time of this transaction to dispose of their respective properties. They were dealing with each other at arm's length. There were no fiduciary relations existing between them. It appears that the transaction was not consummated in haste but on due deliberation by both parties, for both parties

were careful to look over the property proposed by the other to be exchanged; after such careful investigation both parties seem to be satisfied to complete the transaction.''

This fairly expresses the views of this court after a consideration of the evidence submitted.

''This was a trading transaction and both parties seem to have boosted somewhat the values of their respective properties.'' *Hull* v. *Hostettler*, 224 Mich. 365, 369.

But, as was said in that case, we have discovered no testimony that would justify a conclusion that the plaintiffs were induced to make the trade by false representations of the defendants.

The decree is affirmed, with costs to appellees.

North, C. J., and Fead, Fellows, Wiest, McDonald, and Potter, JJ., concurred. Clark, J., did not sit.