BURLINGAME v. B. E. TAYLOR REALTY CO.

1. VENDOR AND PURCHASER—CANCELLATION OF INSTRUMENTS—FRAUD.

In a suit for the cancellation of a contract for the purchase of a city lot, on the ground of fraud, an alleged misrepresentation that the lot sold plaintiff was the last one for sale in the subdivision, *held*, not satisfactorily proven, and it is doubtful whether such representation should be considered material and controlling.

2. SAME—EXPRESSION OF OPINION.

Representations that the road would be widened and made into a cement boulevard during the following summer, and that contracts therefor had been let, may not be made the basis of fraud, since the first is a mere expression of opinion, and the second, although a statement of fact, is not shown to be untrue.

3. EVIDENCE—ORAL PROOF INADMISSIBLE AGAINST WRITTEN CONTRACT.

Where the contract for the purchase of a lot provided that water and sewer systems were to be installed by the city at a time the city decided upon, oral proof of a different agreement or understanding of the terms of the contract as to when such installation was to be made is inadmissible to prove fraud.

4. VENDOR AND PURCHASER—FRAUD—EXPRESSION OF OPINION.

Representation that sewer, gas, and water systems would be installed within six months, is not one concerning an existing fact, but an expression of opinion as to what will be done in the future, and, there being no proof that such representation was made untruthfully or for a dishonest purpose, may not be made the basis of fraud.

5. SAME—CONDUCT OF PLAINTIFF SHOULD BE CONSIDERED.

Plaintiff's conduct in making payments on his contract long after the time for installing improvements had expired, as he now claims was falsely represented to him, should be considered for its bearing upon the *bona fides* of his claim of fraudulent representations.

6. SAME—FRAUD—EXPRESSION OF OPINION.

Representation by the seller that the lot sold would increase in value within six months at least a certain amount, and could be sold within a week for the amount plaintiff agreed to pay, referred to a future condition or mere expression of opinion and may not be made the basis of fraud, especially since there is no proof that the representation was made for a dishonest purpose or with knowledge at the time that it was untrue.

7. SAME—CANCELLATION NOT WARRANTED IN ABSENCE OF PROOF OF UNTRUTH OF REPRESENTATION.

Representation that the lot sold was worth. the contract price at the time may not be made the basis of canceling the contract on the ground of fraud, in the absence of proof of the untruth of the statement; especially where it appears that other lots of like character were being sold at that price.

8. SAME—BURDEN OF PROOF.

Where plaintiff did not sustain the burden of proof that it was falsely represented to him that arrangements had already been made to remove, within a short time, a cemetery on the opposite side of the highway from his lot, and that a tract of land had been purchased for that purpose, or that he believed and relied thereon, in entering into contract for the purchase of the lot, he is not entitled to cancellation of the contract on the ground of fraud.

9. SAME—FRAUD—CANCELLATION—REPRESENTATION AS TO FUTURE TAXES MAY NOT BE RELIED UPON.

If a representation that the annual taxes on a city lot would not be increased beyond a certain amount while it was unimproved was made, it was not such representation as could be relied upon, and therefore may not be made the basis of canceling the contract for the purchase of the lot on the ground of fraud.

10. CANCELLATION OF INSTRUMENTS—CONTRACT NOT TO BE CANCELED MERELY BECAUSE PARTY HAS DISADVANTAGE.

Courts should not cancel contracts merely because one of the parties thereto has contracted to his disadvantage.

Appeal from Ionia; Hawley (Royal A.), J. Submitted April 10, 1929. (Docket No. 136, Calendar No. 34,258.) Decided June 3, 1929.

Bill by Edmund G. Burlingame and another against the B. E. Taylor Realty Company and others to cancel a land contract. From a decree. for plaintiffs, defendants appeal. Reversed, and bill dismissed.

*Watt & Colwell,* for plaintiffs.

*Eldred & Gemuend* (*Campbell, Bulkley & Ledyard,* of counsel), for defendants.

North, C. J. On the 23d of July, 1926, the plaintiffs herein entered into a contract to purchase from the defendant B. E. Taylor Realty Company, a Michigan corporation, lot 65 of B. E. Taylor's Grand River-Telegraph subdivision, located in Redford township, Wayne county, Michigan. The defendants Arthur L. Francis and Samuel Horrocks acted as agents for the realty company in this transaction. The bill of complaint herein is filed for the purpose of securing cancellation of the above-mentioned contract and the repayment of $675 which plaintiffs had paid thereon. This relief is sought on the ground that the plaintiffs were fraudulently induced by the defendants Francis and Horrocks to enter into the land contract. Plaintiffs were granted the relief sought, and defendants have appealed. We will consider separately the various charges of fraud set up in the bill of complaint. In so doing we will refer to Mr. Edmund G. Burlingame as the plaintiff herein because all of the alleged false representations are claimed to have been made to him rather than to Mrs. Burlingame, who signed this contract with her husband.

1. One of the alleged false representations is that lot 65 was the last lot for sale in this subdivision. In our judgment this charge is not satisfactorily

proven. The record discloses plaintiff knew at the time of his purchase that at least one other lot was being sold to his employer, Mr. Dent. There is also testimony that the defendants tried in the presence of the plaintiff to sell other lots to Mr. Dent at this same time. Further, plaintiff knew of sales of still other lots very soon after he made his purchase but he made no complaint to any of the defendants. In any event, it may be seriously doubted whether such a representation should be held in this case to have been of such a material and controlling character as to justify plaintiff's claim that he believed the same, relied upon it, and would not have purchased the lot except for the making of this alleged false statement. Even if the lots had all been sold, it is fair to presume they would not have been thus removed from the market, but would have still been for sale by the respective vendees. At most the statement bore only indirectly upon the existing demand for and possible value of the property. As is also true of many phases of this record, plaintiff's testimony that this representation was made to him is not directly corroborated by any other witness but is specifically denied by the defendants Francis and Horrocks. The statement is alleged to have been made in the presence of plaintiff's employer, Mr. Dent, but the latter was not called as a witness for the plaintiff, who was charged with the burden of proof on this issue. The plaintiff does not explain in his testimony how or why he was particularly influenced by this alleged misrepresentation, and the trial judge in his written opinion did not attach serious importance to it.

2. Plaintiff's allegation that it was falsely represented to him that "Telegraph Road would be widened * * * and made into a cement boulevard

204 feet in width, during the summer of 1927, and that the contracts therefor had been let by the State highway department," is sharply controverted in this record. In so far as this was a statement of what would be done in the way of procuring a public improvement in the future, it was obviously a mere expression of opinion and not a representation as to a fact. The statement "that the contracts therefor had been let" is not shown by any testimony in the record to have been untrue. As a matter of fact the plat of this subdivision provides a width of 204 feet for this highway, and the same is under process of construction in this immediate locality. Here again the testimony of the plaintiff is directly contradicted by two of the defendants, and plaintiff failed to call to his support Mr. Dent who presumably was available and knew of this alleged false representation if it in fact was made. Some of plaintiff's witnesses, who evidently were called to corroborate him in this respect, testified that no time for the completion of this highway undertaking was specified by the defendants in negotiations with such witnesses incident to sales of lots in this subdivision. On this phase of plaintiff's case there is some testimony tending to sustain his claim that defendants represented to him they had been promised by a certain State official that this highway work would be completed during the summer of 1927; but if we assume that such an alleged representation is sufficiently material to constitute a basis for a charge of fraud, it need only be noted that there is no proof in this record that the alleged representation was not true in fact.

3. It is further claimed by the plaintiff that a false representation was made to him "that a sewer system, gas, and city water system would be in-

stalled within six months." He offered no testimony tending to prove this alleged false representation as to the installation of a gas supply. It may be noted that the question of installation of a water system and sewer system is specifically covered by the contract, but nothing is provided therein relative to gas. A 36-inch water main was laid before the bill of complaint was filed herein. The installation of a water system and a sewer system is expressly covered by the terms of the written contract wherein it is stated:

"The sewer and water mains shall be put in by the city of Detroit and at a time the city of Detroit decides upon, etc."

It being thus expressly provided in the written contract that these systems are to be installed "at a time the city of Detroit decides upon," oral proof of a different agreement or understanding of the terms of this contract is inadmissible. Again, it may be noted that the alleged false statement is not one concerning an existing fact but obviously an expression of opinion or judgment as to what will be done in the future, and there is no proof that such expression of judgment was made untruthfully or for a dishonest purpose. Without considering it from the standpoint of its being a possible waiver, which we do not pass upon, it is worthy of note that plaintiff without complaining continued to make payments on his contract for months after the time expired within which he now claims it was falsely represented to him that the highway would be completed and the sewer and water systems installed. His conduct in this respect would seem to have some bearing upon the *bona fides* of his claim of fraudulent misrepresentations.

4. Plaintiff's allegation that it was represented to him this lot "would increase in value within the

next six months at least $1,500, and could be sold by plaintiffs within a week for the amount plaintiff agreed to pay for the same'' so clearly refers to a future condition or a mere expression of an opinion that obviously it cannot be made the basis of relief on the ground of its being a fraudulent representation, especially since there is no proof that these alleged statements were made for a dishonest purpose or with knowledge at the time they were untrue. In connection with this phase of the case, it is also alleged that defendants represented to plaintiff that lot 65 was worth $2,500 (the contract price·) at the time he purchased it. It may be conceded this representation was made, but the record contains no competent proof of the untruth of the state. ment. On the contrary, it appears that other lots of like character in this subdivision were being sold at· that price, and there is no proof that such was not then the fair market value. The untruth of the alleged misrepresentation not having been established, it cannot be made a basis of relief.

5. The bill also alleges that it was falsely represented to plaintiff that arrangements had already been made to remove, within a short time, a cemetery on the opposite side of the highway from plaintiff's lot, and that a tract of land had been purchased for that purpose. This seems to be the most serious allegation of a possible misrepresentation contained in the bill of complaint. If it was made in fact and if it was false in that such an arrangement had not been made or that land for removal purposes had not been purchased, and if the plaintiff believed and relied upon such false representation in entering into his contract, he should be granted the relief sought. The record here presents a plain issue of fact. While there is testimony that in some instances similar representations were made to other

purchasers of lots in this subdivision, aside from this, plaintiff's testimony is uncorroborated, although here again it is fair to infer from the record he had an opportunity to substantiate his claim by the testimony of Mr. Dent. His testimony is squarely contradicted by that of Francis and Horrocks. It is difficult to believe that men who are evidently skilled in real estate matters would attempt to induce a fairly intelligent purchaser to believe that a cemetery which was substantially a mile square, in which there were many valuable monuments and in which new burial lots were being laid out, was going to be removed "within a short time," and this solely for the benefit of an undeveloped subdivision on the opposite side of a broad highway. The following appears from plaintiff's cross-examination:

"*Q.* You stated that they told you they were going to move the cemetery?
"*A.* Yes, sir.   *   *   *
"*Q.* Now couldn't you see from your own experience that this cemetery property was several times the value of this subdivision?
"*A.* I did not stop to think about it—I didn't think about it at all.
"*Q.* Could you now, if you stopped to think about it?
"*A.* Well, I could now."

In July, 1927, plaintiff made a written complaint about this transaction to the Michigan securities commission. He specifically mentioned the matter of this cemetery, but he in no way intimated in his complaint that he was falsely led to believe it was to be moved. Instead, all he stated to the Michigan securities commission was:

"We asked about the cemetery which was across the road, and they said that the cemetery would be

removed *in time* and would not interfere with the resale of the property.''

This statement to the Michigan securities commission seems to be decidedly inconsistent with his present claim that he was told the defendants had already purchased another site to which this cemetery was to be removed ''within a short time.'' We are constrained to hold that on this issue the plaintiff has not sustained the burden of proof either as to this alleged misrepresentation having been made, or that he relied thereon in making the purchase.

6. It is further alleged in the bill of complaint as a ground for relief that the defendants falsely represented to the plaintiff that the annual taxes on said lot would be only $8, and that while said lot remained unimproved the taxes would not be increased. It is now claimed that since the purchase the taxes have been increased to an amount in excess of $8 per year. The trial judge was obviously right in his opinion, wherein he recited:

''If such representation was made, I think in view of the ever-shifting and changing conditions and values of a city like the city of Detroit, that it was not such a representation that plaintiffs could entirely rely upon.''

The plaintiff is a man 38 years of age, his testimony and letters written by him, which are embodied in the record, disclose that he is a man of at least average intelligence and apparently of greater than average intelligence. His allegation in his bill of complaint that he believed and relied upon this claimed representation as being a true statement of fact, and that he was induced thereby to purchase this lot, materially lessens one's faith in his integrity, and illustrates the extremes to which he has

gone in this record in the hope of obtaining relief from the terms of what now appears to have been an unfortunate investment.

We are mindful of the fact that the circuit judge had the advantage of observing the witnesses who testified in this case; but notwithstanding this, we are impressed with the circumstance that in so far as plaintiff's testimony is corroborated at all by competent proof, for the most part it comes from mouths of witnesses who have like claims pending against the Taylor realty company, and we are constrained to hold that the decree entered in the circuit court was not justified by the proof in the case. We do not find that the plaintiff is entitled to any relief under the pleadings and proof in this record. Courts should not cancel contracts merely because one of the parties thereto has contracted to his disadvantage. A decree may be taken dismissing the bill of complaint, with costs of both courts to the defendants.

FEAD, FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.