CITY INVESTMENT CO. *v.* WEATHERWAX.

1. Bills and Notes—Fraud—Evidence—Sufficiency.

In action on mortgage notes given incident to purchase of Florida real estate, defense of fraud is not established where there was no proof of misrepresentation as to material existing fact upon which defendants relied, and no evidence of seller's bad faith in making statements of values or in declarations of promissory character.

2. Same—Consideration.

In action on mortgage notes given incident to purchase of Florida real estate, defense of lack of consideration, *held,* under circumstances, not tenable.

Error to Jackson; Parkinson (James A.), J. Submitted October 29, 1930. (Docket No. 128, Calendar No. 34,967.) Decided January 7, 1931. Rehearing denied April 7, 1931.

Assumpsit by City Investment Company, a Florida corporation, against Clyde E. Weatherwax and another on mortgage notes. Judgment for defendants. Plaintiff brings error. Reversed, and judgment ordered entered for plaintiff.

*J. Adrian Rosenburg* and *Harold M. Shapero,* for plaintiff.

*D. S. Frackelton* and *Whiting, Kleinstiver & Aubrey,* for defendants.

North, J. Plaintiff as assignee of Richard L. Heverle instituted this suit in the circuit court of Jackson county to recover on three mortgage notes signed by defendants aggregating upwards of $60,000. The mortgage incident to which these notes were given covered real estate in Fort Myers, Florida. The defense was recoupment based on the

claim that the notes were procured by fraud, which is outlined in the notice under the plea and hereinafter noted. It is admitted that plaintiff holds these notes subject to the same defenses that could be urged against the payee. The jury found for the defendants. At the close of the proofs plaintiff moved for a directed verdict, and, after verdict, for judgment *non obstante.* Both motions were denied, and judgment for no cause for action entered. Plaintiff reviews by writ of error.

Being interested in the Florida real estate boom, defendants, in August, 1925, went to Fort Myers, Florida. There they entered into negotiations for the purchase of real estate with Mr. Alexander S. Lindenfeld and Henry Colquitt, who were in the real estate business. Through these agents defendants purchased at a price of $130,000 property belonging to Richard L. Heverle, the record title to which was in Colquitt's name. The written offer and acceptance was dated August 17, 1925. The property purchased consisted of about an acre and a half of land, centrally located in Fort Myers and supposedly highly desirable for subdividing into lots to be used for business purposes. Five thousand dollars accompanied defendants' written offer, and, if the transaction was consummated, $25,000 additional was to be paid within 30 days from the date of the instrument, making a cash payment of $30,000. The balance was payable in one, two, three, and four years and secured by a mortgage back on the property.

Defendants claim that Colquitt and Lindenfeld defrauded them by falsely representing that the land involved was worth $250,000 and they could resell this property for the defendants at a price of $250,000 before the first mortgage note fell due,

and also by representing, as defendant Matthews testified—

"that this was a piece of business property   *   *   *   and that it could be turned over readily, that it ought—that it could be turned in less than 30 days; in fact, it was the fastest type of moving property in Ft. Myers.   *   *   *

"Mr. Colquitt told us that because of its location this property could be turned very readily and that it would—it could be turned quickly, enough so in fact that we would not have to make our second payment (referring to first note)—our first payment, and probably could be sold so that we would not have to make the balance of our cash payment."

Being called by the defendants for cross-examination under the statute, Mr. Lindenfeld, who during the trial was a guest in the home of one of the defendants, testified:

"*Q.* Did Colquitt ever say to you if you promised these men you could resell this property for $250,000 you could get them to buy it for $130,000?

"*A.* Words to that effect.   *   *   *

"*Q.* Did you ever hear him (Colquitt) tell Mr. Heverle that he made these promises to these defendants, to resell the property for $250,000?

"*A.* Why, yes; Mr. Heverle was quite often in the office. He knew all about the dealings.   *   *   *

"*Q.* Did you hear Mr. Colquitt tell Mr. Heverle that he had agreed to sell this property here in suit, to the syndicate for $250,000 so that Weatherwax and Matthews would not have to pay their notes?

"*A.* Yes; I stated so.   *   *   *

"*Q.* Prior to August 17, 1925,   *   *   *   you and Colquitt told Weatherwax and Matthews that you would sell this property for $250,000, either to an individual or to a syndicate, is that right?

"*A.* Yes. To induce them to purchase the property."

Colquitt and Lindenfeld were entitled to a commission of $6,500. At Colquitt's request or by reason of an agreement with defendants this amount was deducted from the $30,000 cash payment, and in consideration thereof the defendants agreed that Colquitt and Lindenfeld should have an interest in the profits ultimately derived from a resale of the land. On October 5, 1925, defendants paid the balance of the cash payment, $18,500. In September, 1925, Colquitt and wife executed and acknowledged a deed to defendants, but Weatherwax and Matthews did not execute the mortgage back to Colquitt and sign the mortgage notes until November 30, 1925. By this date defendants had learned that this property was already incumbered by two mortgages, the first for $6,000 and the second mortgage for $8,500. The matter of these mortgages, obtaining an abstract of title, and other details prolonged the time of closing the deal from August 17th to November 30, 1925, which was much more than the 30 days originally contemplated. In the meantime the parties concerned were talking and planning a resale of the property for $250,000. A plan for a syndicate to take over the property on the basis of ten units of $25,000 each was formed. It was hoped that this might be consummated early enough so that the papers which had passed between the defendants and Colquitt might be disregarded and title transferred direct from Colquitt to the syndicate, it being a part of the plan that the defendants' investment should be repaid to them out of down payments from members of the syndicate. The plan was partially carried out. Practically all of the units in the syndicate were placed, but not all the sales were fully consummated. From money thus received there was paid to these defendants nearly $24,000. At this time Mr. Matthews was in the Col-

quitt office working as a real estate salesman and had somewhat to do with collecting money from those who had taken shares in the syndicate. On March 25, 1926, he wrote Mr. Weatherwax at Jackson, Michigan:

"We have not been able to close any more units since I saw you, but are working consistently on it."

In February, 1926, or shortly thereafter, the Florida boom began to hit the rocks. The syndicate plan was not consummated before May, 1926. It was then discovered that there was some irregularity in the manner in which Heverle's wife had executed the deed from Heverle to Colquitt. It seems to have been arranged between the parties to disregard this conveyance to Colquitt and the mortgage and notes which defendants already had executed and delivered to him, and in lieu thereof Heverle and wife were to deed direct to defendants and they in turn would execute another mortgage and notes to Heverle. This was done May 20, 1926, but the instruments were dated back as of October 1, 1925. Four mortgage notes were given to Heverle by the defendants as follows: $10,500 due October 1, 1926; three $25,000 notes due respectively October 1, 1927, 1928, and 1929. This suit is based upon the first two notes and a balance unpaid on the third.

In January, 1927, the plaintiff herein purchased the first mortgage on this property and later foreclosed it. The second mortgage had been paid in the meantime from money received from the syndicate sales. Heverle bought the property at the mortgage sale for $50,000, and under order of the court in the foreclosure proceeding the balance left from this amount after paying the foreclosed mortgage was applied in payment of defendants' note to Heverle due October 1, 1929, and $14,034.55 was

applied on the note due October 1, 1928. By this method Heverle repossessed himself of title to the land unincumbered by any of the transactions above noted. But prior to the foreclosure Heverle's attorney wrote defendants:

"An immediate foreclosure proceeding will be necessary, unless you were willing to convey back the premises to Mr. Heverle for the surrender of your notes in the amount of $85,000."

Of, this proposition defendants' counsel say in their brief:

"They (defendants) did not avail themselves promptly of the opportunity. Such a course would have ended this litigation."

Before the foreclosure proceeding, Mr. Matthews had returned to Jackson, Michigan, but he was kept in touch with the situation by correspondence with both Colquitt and Heverle. As late as November, 1926, Matthews was evidently attempting to work out some plan whereby these defendants, as well as the investors in the syndicate proposition, could save or to some degree protect their interest. This is plainly shown by Matthews' letters written to Colquitt and Heverle as well as by other testimony in the record. On November 2, 1926 (nearly a year after these defendants signed the first mortgage and notes and six months after they gave the substitute mortgage to Heverle), Matthews wrote to Colquitt, addressing him as "Dear Henry" and said:

"We have got no new plans here with respect to this property, but if Mr. Heverle concludes to proceed (with foreclosure) in the matter, naturally we will have to do likewise in order to protect ourselves."

November 20, 1926, Matthews wrote Heverle about the pending matters. Matthews was instru-

mental in having a Mr. Thompson go from Michigan to Florida at that time in the hope and expectation that he could be interested in the proposition. This letter in part reads:

"Mr. Thompson has evidenced his belief in Fort Myers by already investing considerable sums of money there and I hope that on this trip he will still continue his good feelings toward your good town. Am sure, Mr. Heverle, I can rely on you to give him the true conditions as you see them, he will appreciate it as he thinks very well of you and your judgment.

"Have written Henry today, advising him as to the present situation and asking him to take it up immediately with the syndicate holders, if they wish to protect the monies they have already paid in.

"Between Mr. Thompson or the syndicate holders, it seems as though we ought to be able to satisfy you, Mr. Heverle, in some way very quickly. However, should the worst come to pass and we not be able to consummate a finished program acceptable to you, you will find their (that) it is not necessary to go to foreclosure proceedings in order to get the property back.

"You have certainly treated us fairly and squarely from the beginning of our relations and we want to show you our appreciation in a small way, by deeding the property back without any expense to you, in the event it cannot be handled in any other way."

Still later (December 26, 1926) Matthews again wrote to Colquitt. This letter contains the following:

"I have written and wired you asking what the syndicate holders and yourselves intended to do in regard to making further payments in order to protect the interests of all concerned, but to date have not received any reply. Now, Henry, the time has

come when we must know what you folks intend to do, if you have abandoned the proposition then it will be up to us to protect our rights the best way possible, if you have not abandoned it and wish to protect the monies you have paid over to us thus far, then make us a proposition and we will give you an answer immediately as to whether we go alone or whether we go with the syndicate.   *   *   *

"We have shown our disposition to do what was right in every way and have tried to work out a solution fair and equitable to all."

We have quoted from these letters somewhat at length because from them, as well as from other testimony, it conclusively appears that months after these defendants had full knowledge of all the material facts and circumstances which they now set up as constituting the alleged fraud, they were going ahead with their original plan of selling this property at a substantial profit. All the facts material to the alleged fraud were fully known to the defendants before they executed and delivered the notes in suit. Both Mr. Weatherwax and Mr. Matthews were experienced business men. They had made previous investments in Florida real estate. They saw and investigated this property before purchasing. They were dealing with Mr. Heverle and his agents at arm's length. Evidently all were overconfident, they overestimated Florida property values and did not anticipate the turn of the tide. On September 11, 1925, Matthews wrote a letter to Lindenfeld in which he indicated that a prospective sale of this property for $200,000 would not be satisfactory because the proposed price was too small when compared with figures at which other properties there were then selling. As noted, the defendants continued in the contemplated plan of resale for months after they had full knowledge of the truth

as to the value of the land involved and of every other material misrepresentation. In so doing they acted in reliance upon their own judgment.

When construed in the light most favorable to defendants, this record does not sustain their claim of fraud. There is no proof of a misrepresentation as to a material existing fact upon which defendants relied in consummating this purchase and giving these notes. There is no evidence of bad faith in making statements of values or in declarations of a promissory character. It is unfortunate that the defendants made a bad bargain, but that fact does not constitute a legal defense. We have given consideration to defendants' claim of failure of consideration for the notes in question, but under the circumstances disclosed by this record the claimed failure of consideration is not tenable. These defendants are bound by repeated decisions of this court in which the controlling principles of law have been stated and restated; and there is no need of repeating them again. See *Sutton* v. *Benjamin,* 231 Mich. 153; *Feldpausch* v. *Hendershot,* 245 Mich. 694; *Burlingame* v. *Taylor Realty Co.,* 247 Mich. 109; *Balcom* v. *Fortin,* 248 Mich. 397; *Candler* v. *Heigho,* 208 Mich. 115; *Southern Development Co.* v. *Silva,* 125 U. S. 247 (8 Sup. Ct. 881).

These defendants to some extent also relied upon alleged estoppel and release. These defenses are without merit and will not be reviewed. The case is remanded to the circuit court of Jackson county, with instructions to set aside the judgment heretofore entered and to enter judgment for plaintiff for the unpaid portion of the mortgage notes, with accrued interest. Plaintiff will have costs of both courts.

Butzel, C. J., and Wiest, Clark, McDonald, Potter, Sharpe, and Fead, JJ., concurred.